MANHATTAN LIFE INS. CO. (AMES v.). See Case No. 328.

---

## Case No. 9,024.

MANHATTAN LIFE INS. CO. v. FARMERS' & CITIZENS' NAT. BANK et al.

[10 Blatchf. 344.] [1]

Circuit Court, E. D. New York.  Jan. 6, 1873.

BANKS—STOCKS—SECURITY— REISSUE — INSOLVENCY OF BANK—FRAUD—RIGHT TO SHARE IN PROCEEDS.

B., the president of a bank, borrowed money of M., for his own use, on the security of 550

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

shares in the capital stock of the bank. At the time, B. stood on the books of the bank as the owner of more than 550 of its shares, certificates for which, issued to him, were outstanding, but had been passed away by him to bona fide holders. In anticipation of, but without, their surrender, B. caused to be issued to himself certificates for 550 shares, and gave them, with power of attorney to transfer, to M., as security for the loan. They were signed by B., as president, and by R., as cashier, they being the transfer officers. R. knew, as well as B., of the irregularity in their issue. At the time, B. held certificates for 535 shares of the stock of the bank, and the bank had certificates, unissued, for other shares, which had been subscribed for, but were not yet paid for. The certificates given to M. were intended to represent only the shares represented by the certificates the surrender of which was anticipated. M. made the loan in a check, on the faith of the certificates. B. passed the check to the bank, without consideration, and the bank collected it, and placed the money among its assets, B. and R. knowing all the facts. The outstanding certificates were not surrendered or cancelled, nor was any stock transferred on the books. The bank failed and a receiver of it was appointed. M. demanded back his money, and tendered the certificates for surrender, which was refused. The receiver being about to exclude M. from sharing, as a creditor, in the distribution of the assets of the bank, M. brought suit to restrain the receiver from doing so: Held, that a fraud was committed by B. on M.; that M. was entitled, on discovering the fraud, to rescind the contract; that the bank received the money to the use of M. and was liable for it to M.; and that M., on surrendering the certificates, was entitled to share, as a creditor of the bank, in the distribution of its assets.

[Bill in equity by the Manhattan Life Insurance Company against the Farmers' & Citizens' National Bank, of Brooklyn, and Frederick A. Platt, receiver.]

Richard C. Fellows, for plaintiffs.
Tracy, Catlin & Van Cott, for defendants.

BENEDICT, District Judge. This is a suit in equity brought to obtain a decree declaring the plaintiffs entitled to share, as creditors, in the distribution of the assets of an insolvent national bank, and enjoining any distribution of such assets otherwise than pro rata between the other creditors, and the plaintiffs as creditors to the amount of $10,000 and interest.

The facts upon which the claim to this relief is based appear in the evidence as follows: On the 8th of August, 1867, one Beach, the president of the Farmers' & Citizens' National Bank, a corporation then, to all appearances, solvent, borrowed of the plaintiffs, for his own use, the sum of $10,000, upon the security of 550 shares in the capital stock of the bank. This bank had formerly been a state bank, with a capital of $160,000; but it had been changed into a national bank, as authorized by the national banking act, and its capital increased, or supposed to have been increased, to $300,000. The stock of the state bank held by each stockholder therein had been changed into stock in the national bank, to an equal amount, and the outstanding certificates of stock in the state bank were treat-

ed by all as representing the same shares in the national bank, until surrender and other certificates issued in their place. At the time Beach effected the loan in question, he stood on the books of the Farmers' & Citizens' National Bank as the owner of shares of its stock exceeding 550 in number, which were formerly shares in the state bank, now shares in the national bank. Certificates in the usual form, representing these shares, had, prior to the change to a national bank, been given to one Crawford, and were still outstanding, held by bona fide holders, as security for loans. These certificates, Beach says, he anticipated were to be surrendered by Crawford, on the 8th of August, 1867, and, in anticipation of such a surrender during the day, as he says, he, on that day, caused to be issued and delivered to himself certificates representing 550 of these shares of the stock of the bank, no surrender of the outstanding certificates having been made. The certificates so issued, with a power of attorney to transfer and sell, he, on the same day, gave to the plaintiffs, as security for their loan to him. The certificates so passed to the plaintiffs were in the ordinary form, and certified that Beach was entitled to 550 shares in the capital stock of the Farmers' & Citizens' National Bank, transferable only on the books of the company, in person, or by attorney, on the surrender of the certificates. They were signed by Beach, as president, and Redfield, as cashier, and these officers were the transfer officers of the bank. The certificates were, in all respects, regular upon their face, but Redfield, the cashier, as well as Beach, the president, of the bank, knew that they were irregularly issued, because certificates for the same stock were then outstanding in the hands of bona fide holders, and beyond the control of the bank or of Beach. At the same time Beach did hold certificates for 535 shares of the capital stock of the bank, and there were, also, in the possession of the bank, certificates duly made out and executed for a much larger number of shares of stock, which had been subscribed for as part of increased capital of the bank, for which notes had been taken, and to which the subscribers named in the certificates, and who stood on the books of the bank as stockholders to the amount, were entitled, upon payment of the notes; but, as the evidence shows, the certificates for 550 shares, issued on the 8th of August, 1867, and delivered to the plaintiffs, were not intended to represent any of these other shares, but represented 550 of the shares certificates for which had been given to Crawford, and the return whereof was then anticipated. Upon the faith of the certificates so issued on August 8th, Beach obtained of the plaintiffs their check for $10,-000, and this check he at once passed into the possession of the bank, without any consideration, apparently with the intention of retiring the new certificates in case the old

ones given to Crawford were not surrendered and cancelled. The bank collected the check, the president and the cashier both knowing the circumstances under which it had been obtained from the plaintiffs, and the money of the plaintiffs thus passed into the assets of the bank. None of the certificates given to Crawford were ever surrendered or cancelled, nor was any transfer of the stock upon the books of the bank attempted, either by Crawford, or by the plaintiffs, or by any other person, and such transfer, doubtless, became impossible when, shortly after, the bank failed and its affairs passed into the hands of the defendant Platt, as receiver, appointed by the comptroller, under the national banking act [13 Stat. 99]. Upon ascertaining, after the failure of the bank, the character of the certificates delivered to them, the plaintiffs at once offered to surrender them and demanded back their money, which being refused, and the receiver announcing his intention to exclude them from sharing, as creditors, in the distribution of the assets of the bank, this action was brought.

It will be seen, from the facts above stated, that the transaction of the 8th of August, on the part of the bank officers, was a duplication of certificates for 550 shares of actual and valid stock of the bank then, as now, standing in the name of Beach, the president, upon the transfer books of the bank, but of which Beach was not then the owner, he having already passed away his title.

The main question in the case then arises—whether a fraud upon the plaintiffs was committed by Beach, when he passed to them, as regular and valid, such certificates as those of August 8th. Clearly, there was fraud. By necessary implication, Beach, when he delivered the certificates to the plaintiffs, represented that he was then the owner of the stock referred to therein; that no other person than the holder of those certificates was entitled to that stock; and that the stock could not be transferred upon the books of the bank except upon a surrender of those certificates. Whereas, Beach was not the owner of the stock, the holder of other certificates for the same shares was entitled, upon a surrender thereof, to become the stockholder thereof on the books of the bank, and, although a transfer of the shares, if actually made by the bank, upon a surrender of these certificates, would cut off the equitable rights of other parties to the shares, still, such a transfer would be rendered impossible by a prior surrender of the old certificates and a transfer of the shares to the holders thereof, and could not be compelled, as against such holders, theirs being the prior of two equal equities. Herein lay the fraud upon the plaintiffs, and, by reason of that fraud, the plaintiffs became entitled, upon discovering it, to rescind the contract, give up the certificates, and demand their money. This they elected to do, and their demand is good

against the bank, because of the conceded fact, that their check, obtained by fraud, was delivered to the bank without consideration, and with full notice of the circumstances under which it was obtained, not only through Beach, its president, but through Redfield, its cashier, who received it; and the bank, after such notice, collected the check and now has the money. Money so collected is money had and received to the use of the plaintiffs.

It is no answer to this view of the case, to say, that the certificates of August 8th were valid to give the plaintiffs a right of action against the bank in the event of a failure to obtain a transfer of the shares represented thereby. Whether the certificates, passed to the plaintiffs, were or were not sufficient security, is immaterial. They were not the kind of security that was agreed for, but of a different character; and the false representation of their character, which Beach, by necessary implication, made, when he signed and delivered them to the plaintiffs, gave the plaintiffs the right, on discovering that fact, to reject them and sue for their money.

It has been contended, on the part of the defendants, that the act of Beach, in issuing the certificates of August 8th, in legal effect, cancelled the certificates of the shares of stock which he then had, and thereby rendered the certificates given to the plaintiffs regular and valid. But, the testimony is plain, that the certificates of August 8th were not intended to represent any of the shares certificates for which Beach then had. Beach expressly says, that he told Redfield, that those certificates were not to be cancelled, nor those shares transferred. None of those certificates ever were cancelled or surrendered, nor was any of that stock transferred. Besides, Beach had only 535 shares, and some of those were not in his name, while the certificates passed to the plaintiffs call for 550 shares standing in his name.

Equally unavailing is the suggestion, that the bank itself, when the certificates of August 8th were issued, owned a large number of its shares, being those of new subscribers, held as above described, and that these are to be deemed represented by the certificates issued to the plaintiffs, thus rendering them valid. As I understand the evidence, the bank had no shares whatever applicable to such a purpose; but, if it had the power so to deal with the shares referred to, none of them were ever placed in the name of Beach upon the books. The bank never authorized a transfer of any of them to Beach or to the plaintiffs, and it was never intended that the certificates of August 8th should represent any of those shares, but only shares the certificates of which had been given to Crawford, and were then outstanding. The fact, that the bank, in case of a surrender by the plaintiffs of the certificates of August 8th, might be able, if then so minded, either by the appropriation of Beach's shares, or by a resort to shares of its own, to place in the name of the plaintiffs some other 550 shares would not constitute the certificates of August 8th lawful instruments, valid to enable the plaintiffs, at their option, to be placed on the books of the bank, as owners of the shares of stock which the certificates represented, nor would it make true the representation that Beach owned those shares, and that they were transferable upon a surrender of those certificates, and not otherwise; and it would have no effect to impair the right of the plaintiffs to reject those certificates because of the fraud, and to demand back their money.

My opinion, therefore, is, that, upon the view of this case above expressed, the plaintiffs are entitled to the relief demanded. I am, also, of the further opinion, that, when the bank took and, without consideration, applied to its own use the money obtained by its president by means of the certificates of August 8th, and with full knowledge, not only through Beach, its president, but Redfield, its cashier, that the money had been obtained upon the faith of duplicate certificates of stock issued by the bank to a person not then the owner of the stock, the bank became directly liable to the plaintiffs for the money, as the borrower thereof, and cannot be permitted to say that Beach was not authorized so to obtain the money for the bank.

My conclusion, therefore, is, that, upon surrendering, for cancellation, the certificates of August 8th, according to the tender made, the plaintiffs are entitled to be treated as creditors of the Farmers' & Citizens' National Bank, to the amount of $10,000, with interest from August 9th, 1867, and that any distribution of the assets of that bank, otherwise than pro rata, among the other creditors and the plaintiffs, as such creditors, must be enjoined.